IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 20, 2006

## LAWRENCE WARREN PIERCE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2002-B-803      Steve Dozier, Judge**

_____

**No. M2005-02565-CCA-R3-PC - Filed January 23, 2007**

_____

Aggrieved of his kidnapping and sexual battery convictions, the petitioner, Lawrence Warren Pierce, sought post-conviction relief, which was denied by the Davidson County Criminal Court after an evidentiary hearing.  On appeal, the petitioner presents several issues of the ineffective assistance of counsel. We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Dwight Scott, Nashville, Tennessee, for the Appellant, Lawrence Warren Pierce.

Robert E. Cooper, Jr., Attorney General & Reporter; C. Daniel Lins, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Amy Eisenbeck, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The defendant was indicted for aggravated kidnapping and rape, and a jury convicted him of the lesser-included offenses of kidnapping and sexual battery.  The proof at trial showed that, on October 24, 2001, the victim visited Holiday Inn's Ivory's Bar on Briley Parkway in Nashville. *See State v. Lawrence Warren Pierce*, No. M2003-01924-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Nashville, Nov. 9, 2004).  She recognized the petitioner from a construction site where she had worked.  *Id.*  After some time, the petitioner rode with the victim to a sports bar, and then the two purchased fast food hamburgers before driving to the petitioner's hotel, the Days Inn.  *Id.*  The victim parked her vehicle, and the two "were 'laughing and cutting up'" when the petitioner "playfully" took her keys and exited the vehicle.  *Id.*  The victim followed the petitioner to retrieve her keys, and in front of his hotel room door, the petitioner grabbed her arm and forced her inside his room, where he sexually assaulted her.  *Id.*, slip op. at 3.

After the assault, the petitioner made the victim write her cellular telephone number onto the front of the hotel room telephone book, and the petitioner called the number to assure himself that she had written the correct number. *Id.* He allowed her to leave, and she drove to a Ramada Inn where she called 9-1-1. *Id.*

Following conviction, the trial court sentenced the petitioner as a Range II, multiple offender to nine years for the kidnapping conviction and three years for the sexual battery conviction, to be served consecutively.

On direct appeal, this court affirmed all convictions, but it reduced the kidnapping sentence to eight years. *See id.*, slip op. at 15. The petitioner then filed a timely petition for post-conviction relief, which the trial court denied after an evidentiary hearing.

At the post-conviction hearing, trial counsel testified that he had "one-on-one, face-to-face" contact with the petitioner 13 times for a total of 6.3 hours. During these meetings, trial counsel learned of the petitioner's version of events and discussed various issues, such as the petitioner's right to or not to testify and cross-examination. Trial counsel further stated that he did not discuss "every, single point of . . . trial tactic[s] . . . with [the petitioner]."

Regarding interviewing the victim, trial counsel testified that no preliminary hearing was held, but he had the State's discovery information. He testified that he could not recall whether he attempted to interview the victim prior to trial.

Trial counsel testified that he did not attempt to locate a witness in Ivory's Bar because the petitioner failed to provide sufficient information to identify that person. The only information provided was that the witness owned a tanning salon in a town that started with "H" in Pennsylvania. Trial counsel also testified that he was unaware whether the witness was a guest of the hotel or just a patron of the hotel's bar.

Trial counsel further testified that the defense theory was that the contact between the victim and the petitioner was consensual. Furthermore, the victim did not deny that her relationship with the petitioner was consensual and friendly while they were in public view; neither witnesses from the bar nor the hotel clerk could offer testimony about what happened right outside and inside the petitioner's hotel room. However, trial counsel did admit that the Days Inn lobby clerk arguably could have seen them walking toward the petitioner's room and that the petitioner told counsel that he waved to the clerk as they passed; however, trial counsel failed to interview the clerk.

Moreover, trial counsel testified that his office employed private investigators, but no one interviewed any witnesses. He also testified that neither he nor his investigators visited the Days Inn, but he was aware of its layout from discussions with the petitioner and from the sketch the petitioner drew. Trial counsel was also aware that the petitioner denied ever possessing the victim's keys and said that he was carrying take-out food when walking to his hotel room. Trial counsel, however, testified that he did not recall whether the victim testified at trial that she was carrying a

drink or take-out food, and he did not recall cross-examining her regarding what she was carrying. The petitioner had told trial counsel prior to trial that the victim entered the hotel room voluntarily.

Trial counsel further testified that the victim testified that the petitioner made her write her cellular telephone number on a telephone book and that the petitioner made her call it from the hotel telephone to verify its correctness. The petitioner told trial counsel that he telephoned the victim after she left the hotel room and left a message. Trial counsel did not attempt to obtain the telephone records from either telephone because he did not think that the records would exculpate the petitioner.

Trial counsel testified that he had discussed the testimony of the State's DNA expert with the petitioner and that he did not recall the petitioner instructing him regarding his cross-examination of the expert. He did recall that the petitioner admitted the semen found on the victim's clothing was his. Trial counsel also recalled that the State had not established the chain of custody for the evidence, but the petitioner's admission that the semen was his made it a "non-issue."

The petitioner testified that trial counsel met with him three to five times at the correctional facility for a total of 45 minutes. He stated that they never discussed trial strategy, and he testified, "[Trial counsel] was very vague about anything we were gonna do." The petitioner further testified that, at one point, trial counsel withdrew from his case due to a conflict of interests. A few months later, he informed the petitioner that the conflict was a misunderstanding and that he would continue to represent the petitioner. The petitioner also testified that trial counsel "winged it at trial."

Regarding possible witnesses, the petitioner testified that he informed trial counsel of the witness from Ivory's Bar. He said, "Please try to contact this lady in Harrisburg, Pennsylvania." He also informed trial counsel that the witness owned a tanning salon there. Furthermore, the petitioner informed trial counsel of the route he and the victim walked to his hotel room, waving at the Days Inn hotel clerk on the way. He told trial counsel that the clerk was a black-haired girl, who knows him because he frequently stays at the hotel. The petitioner testified that he alerted trial counsel to the existence of both potential witnesses prior to trial.

The petitioner also testified that he told trial counsel that, while walking to his hotel room, he carried a soda, a bag of groceries, and no car keys, and the victim carried a soda and the take-out food. He testified that because he needed two hands to open the hotel room door due to the card key, he could not have forced the victim into the room. The petitioner further testified that, when the police interviewed the victim, she drank the same soda that the petitioner had purchased for her. The petitioner testified that he instructed trial counsel to cross-examine the victim regarding these issues.

Moreover, the petitioner testified that he informed trial counsel that the victim voluntarily wrote her cellular telephone number onto the phonebook prior to sexual activity and that he called it after she had left. He told trial counsel that a police officer was with the victim at the

hospital when the petitioner called. The petitioner testified that he requested trial counsel have the victim's handwriting analyzed for "distress" and that he should get the telephone records.

Regarding cross-examination of the State's DNA expert, the petitioner testified that he instructed trial counsel not to vigorously cross-examine her regarding the semen. He admitted that it was his semen, and he testified that trial counsel's questioning of the expert made "it look like [the petitioner] had something to hide." The petitioner further testified that, during his police interview, "[he] did tell a white lie and told [the police the semen] was not [his]."

The petitioner also claimed that trial counsel did not allow him to review the motion for new trial.

The post-conviction court found that trial counsel sufficiently met with and advised the petitioner, accrediting trial counsel's testimony that he met with the petitioner 13 times for a total of 6.3 hours and that he informed the petitioner of the evidence and the theory of defense.

The court also found that the petitioner's Sixth Amendment rights were not violated by trial counsel's alleged failure to properly investigate the case. The court found that the petitioner failed to show how a visit to the hotel would have helped his case, and he failed to show how the lack of photographs prejudiced him at trial. Furthermore, the court accredited trial counsel's testimony that, even if the Days Inn hotel clerk testified that the victim voluntarily entered the petitioner's room, the clerk could not testify as to the activities inside the room. The court, therefore, found that the petitioner failed to show that trial counsel performed deficiently or that he was prejudiced by counsel's failure to interview the clerk.

As to trial counsel's failure to locate and interview the Ivory's Bar witness, the court found that trial counsel had insufficient information to locate the witness. In addition, the court stated that the petitioner had failed to produce the witness at the post-conviction hearing, and the court declined to speculate as to the contents of her testimony.

The post-conviction court found that the petitioner failed to show what additional issues that he would have presented in his motion for new trial and, therefore, stated that the petitioner failed to raise a "meritorious claim" that trial counsel did not allow him to review the motion.

Finally, the post-conviction court stated that, after reviewing the record, it found that trial counsel represented the petitioner with "vigor and zealousness" and denied the petition "as to any and all issues raised."[1]

---

[1] The post-conviction court also found that trial counsel's failure to interview another witness, "Larry," was not ineffective assistance of counsel, and the court further found that trial counsel was not ineffective for failing to obtain a DNA expert regarding the semen found on the victim's clothing. These two rulings are not challenged on appeal.

On appeal of the denial of his petition for post-conviction relief, the petitioner in essence raises the following issues of the ineffective assistance of trial counsel:

1. Trial counsel's failure to thoroughly investigate the case, namely:
   a. failing to interview the victim prior to trial;
   b. failing to interview the Days Inn hotel clerk;
   c. failing to locate and interview a witness who patronized Ivory's Bar;
   d. failing to investigate the Days Inn's layout; and
   e. failing to obtain the hotel room's and the victim's cellular telephone's records;
2. Trial counsel's failure to cross-examine two witnesses, according to his instructions;
3. Trial counsel's failure to consult with the petitioner sufficiently; and
4. Trial counsel's failure to thoroughly discuss the Motion for New Trial with the petitioner.

Because the post-conviction court's denial of relief is supported in the record, we affirm that court's judgment.

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

The Sixth Amendment of the United States Constitution and Article I, section 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel. *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see also Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975). "Claims of ineffective assistance of counsel are considered mixed questions of law and fact and are subject to de novo review." *Serrano v. State*, 133 S.W.3d 599, 603 (Tenn. 2004); *see State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When a defendant claims ineffective assistance of counsel, the court must determine (1) whether counsel's performance was within the range of competence demanded of attorneys in criminal cases, *Baxter*, 523 S.W.2d at 936, and (2) whether any deficient performance prejudiced the petitioner, *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984); *see also Powers v. State*, 942 S.W.2d 551, 557 (Tenn. Crim. App. 1996). Courts need not address these components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. *Henley*, 960 S.W.2d at 580.

A reviewing court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 695, 104 S. Ct. at

2070. This court should not second-guess informed tactical and strategic decisions by defense counsel. *Henley*, 960 S.W.2d at 579. It must evaluate counsel's performance from counsel's perspective at the time of the alleged error and in light of the totality of the evidence. *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2070.

However, this court's deference to counsel's tactical decisions will depend upon counsel's adequate investigation of defense options. *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126 (1987). Assuming adequate investigation, the fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. *Jerry Whiteside Dickerson v. State*, No. 03C01-9710-CR-00472 (Tenn. Crim. App., Knoxville, Sept. 16, 1998); *Thompson v. State*, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997).

In sum, a defendant is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). To show prejudice, the petitioner must demonstrate that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.

*I. Trial counsel's failure to thoroughly investigate the case*

*A. Failure to interview the victim prior to trial*

On appeal, the petitioner claims that trial counsel was ineffective for failing to interview the victim prior to trial. He neither raised this issue in his post-conviction petition nor his amended petition.

Under the Post-Conviction Procedure Act, waiver occurs when the "the petitioner personally or through an attorney fail[s] to present [the claim] for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." T.C.A. § 40-30-106(g) (2006). Waiver in a post-conviction context is determined by an objective standard under which a petitioner is bound by the action or inaction of his attorney. *House v. State*, 911 S.W.2d 705, 714 (Tenn. 1995). The presumption that a ground not raised has been waived is rebuttable. T.C.A. § 40-30-106(g). To rebut the presumption, the petition must contain "allegations of fact supporting each claim for relief set forth in the petition and allegations of fact explaining why each ground for relief was not previously presented in any earlier proceeding." *Id*. § 40-30-104(e).

In the context of a post-conviction proceeding, an issue raised for the first time on appeal is waived. *See State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). Therefore, the petitioner waived this issue.

## B. Failure to interview the Days Inn hotel clerk

The petitioner contends that trial counsel failed to interview the Days Inn hotel clerk. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses . . . , these witnesses should be presented by the [post-conviction] petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). If he fails to do so, he generally fails to establish ineffective assistance of counsel. *Id.* The post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. *Id.*; *see also Wade v. State*, 914 S.W.2d 97, 102 (Tenn. Crim. App. 1995). At the post-conviction hearing, the petitioner testified that the clerk's testimony would verify his version of events that the victim walked voluntarily to his hotel room; however, the petitioner did not present this witness. Because the petitioner did not present the witness at the hearing, he has failed to establish ineffective assistance of counsel.

## C. Failure to locate and interview a witness, who patronized Ivory's Bar

Again, the petitioner claims that trial counsel was ineffective for failing to locate and interview a witness, who supposedly observed how the petitioner and the victim interacted at Ivory's Bar. The petitioner testified that this witness would testify that the victim actively pursued the petitioner. However, as stated previously, the post-conviction court may not speculate as to a witness's testimony, *Black*, 794 S.W.2d at 757; *see also Wade*, 914 S.W.2d at 102; furthermore, by failing to present the witness at the post-conviction hearing, the petitioner failed to establish ineffective assistance of counsel.

## D. Failure to investigate the Days Inn's layout

The petitioner also contends that trial counsel was ineffective for failing to investigate the Days Inn's layout. However, trial counsel testified that he was aware of the hotel's layout due to the petitioner's description and sketch. The post-conviction court accredited trial counsel's testimony. Moreover, the defendant failed to demonstrate that trial counsel's failure to visit the hotel actually prejudiced him. Thus, the petitioner has failed to show by clear and convincing evidence that counsel provided ineffective assistance of counsel.

## E. Failure to obtain the hotel room's and the victim's cellular telephone's records

The petitioner complains that trial counsel's services were ineffective because he failed to obtain the hotel room's and the victim's cellular telephone's records.[2] The petitioner testified that he called the victim's cellular telephone after she left his hotel room. He told trial

---

[2]We note that the post-conviction court did not articulate specific findings regarding this issue. However, the post-conviction court did accredit the testimony of trial counsel, who testified concerning this specific issue. Furthermore, the post-conviction court stated in its written order that it denied the petition "as to any and all issues raised."

counsel that a police officer told him that he and the victim were at the hospital when the petitioner called. In addition, trial counsel testified that he did not attempt to obtain the telephone records from either telephone because he did not think that the records would exculpate the petitioner. The petitioner failed to show how the failure prejudiced him at trial. Thus, he failed to show that trial counsel's decision not to obtain the telephone records amounted to ineffective assistance of counsel.

## II. *Trial counsel's failure to cross-examine two witnesses, according to his instructions*

The petitioner contends that, with two different witnesses, the victim and the State's DNA expert, trial counsel refused to follow his instructions regarding the witnesses' cross-examinations and, thus, he performed ineffectively.[3]

First, the petitioner testified that he instructed trial counsel to cross-examine the victim regarding what he and the victim carried in their hands while outside the hotel room door. He testified that he carried a soda, a bag of groceries, and no car keys, and the victim carried a soda and the take-out food. The petitioner further testified that, because he needed two hands to open the hotel room door due to the card key, he could not have forced the victim into the room. Trial counsel was aware that the petitioner had take-out food in his hands; however, he did not recall whether the victim carried anything. Also, he did not recall cross-examining her regarding what she was carrying.

Trial counsel's decision not to cross-examine a witness regarding an issue is a strategical or tactical choice, if informed and based upon adequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982); *see also Lofton v. State*, 898 S.W.2d 246, 249 (Tenn. Crim. App. 1994) (finding that trial counsel was not ineffective for not cross-examining an unindicted co-conspirator at petitioner's trial). Moreover, the defendant failed to show that trial counsel's decision not to cross-examine the victim on this issue prejudiced him.

Petitioner also claims that trial counsel was ineffective for failing to follow his instructions regarding cross-examination of the State's DNA expert. He testified that he instructed trial counsel not to vigorously cross-examine the expert regarding the semen, and he complains that the vigorous cross-examination, when he admitted that the semen found was his, made "it look like [he] had something to hide." Trial counsel did not recall the petitioner instructing him regarding his cross-examination of the expert. Again, we decline to second-guess trial counsel's tactical and strategic decision regarding cross-examination. *See Henley*, 960 S.W.2d at 579.

Accordingly, we hold that the petitioner has failed to establish either deficient performance or prejudice resulting from counsel's representation regarding both cross-examinations.

---

[3]Again, the post-conviction court did not articulate specific findings regarding this issue. Trial counsel testified concerning the witnesses' cross-examinations, and the post-conviction court accredited his testimony. The post-conviction court decided this issue when it denied the petition "as to any and all issues raised."

*III. Trial counsel's failure to consult with the petitioner sufficiently*

The petitioner argues that trial counsel was ineffective for not meeting with him sufficiently. Trial counsel's testimony, which was accredited by the post-conviction court, showed that he met with the petitioner 13 times for a total of 6.3 hours. The post-conviction court found this amount of time sufficient. Furthermore, in testifying at the post-conviction hearing, the petitioner did nothing more than make these arguments. He failed to demonstrate how this prejudiced him. Thus, the petitioner has failed to show by clear and convincing evidence that counsel's services were deficient.

*IV. Trial counsel's failure to thoroughly discuss the Motion for New Trial with the petitioner*

The petitioner also claims that trial counsel did not allow him to review the motion for new trial. The petition for post-conviction relief states that trial counsel failed to adequately consult with petitioner at "crucial stages" of "prior proceedings" including "post-trial." At the evidentiary hearing, the petitioner vaguely mentioned this issue. When his post-conviction counsel asked whether trial counsel discussed trial strategy and tactics with him, the petitioner replied that trial counsel discussed neither the appeal nor the motion for retrial. The post-conviction court found that the petitioner failed to show additional issues that he would have presented in his motion for new trial and, therefore, stated that the petitioner failed to raise a "meritorious claim."

Accordingly, we hold that the petitioner has failed to establish either deficient performance or prejudice resulting from counsel's representation.

Following our review, we affirm the order of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE

-9-